225 A.2d 222.

EDWARD P. TRAVERS *vs.* ZONING BOARD OF REVIEW
OF THE TOWN OF BRISTOL.

JANUARY 6, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. An abutting property owner brought this petition for certiorari to review the action of the respondent board in granting relief from lot-line and area regulations in the proposed erection of a new two-car garage accessory to a house on a residential lot to replace an existing one-car garage. Pursuant to the writ the board certified the pertinent records to this court.

Mr. Ralph DeFelice, hereinafter referred to as the applicant, owns a parcel of land located in an area zoned "GR Zone—General Residence" in the town of Bristol. The land, 3,311 square feet in area, is improved with a house and a wooden one-car garage and has a frontage of 43 feet on Constitution street and 77 feet on High street. The northern line of the applicant's property abuts petitioner's land on High street. The applicant's present garage is located in the rear of his lot one foot from petitioner's line and eighteen feet from the front yard line.

The applicant filed an application requesting permission to replace the existing garage, which measures 17 feet by 18 feet with a new two-car cinder block garage measuring 20 feet 8 inches by 22 feet. He based his request on the grounds that the present garage was in a rundown condition; that it was too narrow for the new cars; and that the new garage would be a much safer structure and more pleasing to the eye. He proposed to erect the north and west walls of the new garage on the same foundation lines of the old garage, but the garage would be enlarged by extending it

4 feet easterly toward High street and 3 feet, 8 inches southerly toward Constitution street. The proposed location of the garage does not comply with the dimensional regulations prescribed in the pertinent portion of art. III of the provisions of the general regulations set forth in art. VII, sec. 2 E, relating to yard exceptions. Bristol Zoning Ordinance (1961).

The applicant, the petitioner, and one other remonstrant appeared at the hearing before the board. The sum and substance of the remonstrants' objections was that no deviation should be allowed from the lot-line and area regulations. The petitioner stated that his objection was that "new regulations apply unless there is extreme hardship." The other remonstrant objected on the ground that if the applicant "is allowed to construct a cinder block garage there, then you must give permission to all." The applicant repeated what he had already alleged in his application to which was attached a plot plan showing the location of the proposed garage on his land.

After the hearing the board granted the application without giving any reason for its decision which, as recorded in the transcript, is as follows:

> "The petition of Ralph DeFelice of 75 Constitution Street, Bristol, Rhode Island was granted upon a motion made by Mr. Ligeiro, seconded by Mr. Miserandino. Miss Morris and Mr. Lavers voted affirmative and Mr. Medeiros abstained from voting."

We note at the outset that no special exception use is involved in this proceeding. A garage is permitted as an accessory use under art. IV, sec. 14, of the ordinance. It is not one of the uses designated as a special exception use in sec. 2 of art. IV. The relief sought here is not addressed to the discretion exercised by the board when passing on applications for special exceptions or variances for changes to an otherwise not permitted use.

The question raised by this record is whether the board

was warranted in allowing the applicant to deviate from the lot-line and area requirements of the ordinance on the ground of the hardship doctrine declared in *Viti* v. *Zoning Board of Review,* 92 R. I. 59, and reaffirmed in *Reynolds* v. *Zoning Board of Review,* 95 R. I. 437; *DeFelice* v. *Zoning Board of Review,* 96 R. I. 99; *Reynolds* v. *Zoning Board of Review,* 96 R. I. 340 (reargument); and *H. J. Bernard Realty Co.* v. *Zoning Board of Review,* 96 R. I. 390.

In arguing that the board did not have the power to grant a variance because there was no evidence relating to unnecessary hardship to the applicant, petitioner misconceives the nature of the relief sought and the standard to be applied in determining whether the application should be granted. The facts in this case bring it squarely within the *Viti* rule under which an applicant is not required "to prove a loss of all beneficial use in order to establish a right to relief." *Viti, supra,* at page 64.

But, as we said in *H. J. Bernard Realty Co., supra,* at page 394, in discussing the *Viti* doctrine:

> "We did not hold, however, as petitioner seems to infer, that on application for such relief a property owner need show no more than that the varying of the proscribed regulation is for him a preferable alternative to compliance therewith, where compliance might be had, albeit with some inconvenience.
>
> "There must be a showing of an adverse effect amounting to more than mere inconvenience."

The petitioner attacks the validity of the decision on two grounds. The first is the board's failure to state its reasons and the second is that there is no competent evidence in the record to support the decision.

The petitioner's first ground is a valid criticism of the board's decision. We have many times pointed out the inconvenience to litigants as well as to the court resulting from the failure of a zoning board to state the reasons for

their decision. As the court said many years ago in *Robinson* v. *Town Council,* 60 R. I. 422 at page 437:

> "Such boards should also set forth the ground or grounds for their decision, as this court is entitled to know the basis for their action, so that it may determine whether their decision on the facts in evidence bears a substantial relation to the protection of the public interests."

In *Petrarca* v. *Zoning Board of Review,* 78 R. I. 130, 133, the court said:

> "Unless a zoning board complies with the above-mentioned direction it runs the risk of reversal if this court is unable to find from the record that there were good and sufficient grounds for the decision in question."

We have examined the record to determine whether there is competent evidence therein showing an adverse effect amounting to more than mere inconvenience if the relief requested is denied. In doing so we have kept in mind that this test must be applied reasonably and realistically.

The applicant's existing garage is an old wooden structure which is not suitable for modern automobiles. He requests permission to deviate from the regulations because, as he stated, "I want to stay on the line to give the tenants a little yard." Implicit in the board's decision is the finding that the evidence showed an adverse effect amounting to more than mere inconvenience and to deny the applicant a fuller use of his property and at the same time serve no public interest would be arbitrary and an abuse of discretion. See *Cugini* v. *Chiaradio,* 96 R. I. 120, which, unlike the case at bar, involved an application for a special exception. Nevertheless at page 127 we held that, in the absence of an express finding thereon, there was an implicit finding in the decision of those prerequisite facts when the state of the evidence was such as would warrant the making of such finding.

In our opinion, the record in this case, scanty as it may be, warrants the finding that the denial of the application would create an adverse effect upon the applicant's land amounting to more than mere inconvenience without at the same time serving any public interest. The plot plan shows the location of the existing garage as well as that of the proposed garage and discloses that the existing lot-line limitations will not be affected by the relief granted. To deny the requested relief would serve no public interest. In the circumstances we cannot say that the board acted arbitrarily or abused its discretion.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records which have been certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

JOSLIN, J., dissenting. The petitioner makes no direct attack upon the *Viti* doctrine, although upon such a challenge the court would have the opportunity, if it so desired, to reexamine the validity of the principle that side and rear yard regulations governing a permitted use do not constitute "zoning" as that term is generally construed. Even under the *Viti* doctrine, however, I am unable to find anything in this record which meets the standard the court has established for permitting a variation from duly enacted side and rear yard regulations.

In *Viti* v. *Zoning Board of Review*, 92 R. I. 59, and *Reynolds* v. *Zoning Board of Review*, 95 R. I. 437, compliance with lot-line regulations was excused upon showings that insistence upon strict deference thereto would destroy the purpose of the proposed use or would make it impossible to construct the proposed structure. It was not until the decision in *H. J. Bernard Realty Co.* v. *Zoning Board of Review*, 96 R. I. 390, however, that a standard was fixed for determining when and under what circumstances a landowner should be permitted to deviate from side and rear yard regulations.

In that case the applicant, notwithstanding that he could have constructed the proposed addition to a building within the lot-line regulations, applied for a variation. He sought relief because construction within the limits of the regulations would be more costly, would cut off daylight from the basement windows of the existing structure, and would reduce the area available for parking. The zoning board denied relief and we refused to disturb its decision. We said in substance that affirmative board action would have been justified only if there had been "a showing by the petitioner that such relief was reasonably necessary for the full enjoyment of a permitted use." In that statement we find the test. Stated in terms of a standard, it allows a grant of a "deviation" only upon a showing that the applicant will otherwise be denied the opportunity to utilize his property for a permitted use. In applying the standard the court in substance held that such factors as added expense, loss of light and reduced parking areas amount to nothing more than "inconvenience" if the circumstances are such that an applicant can fully enjoy his land for the desired purpose without "deviating" from lot-line regulations. "Mere inconvenience," the court concluded, should never be enough to justify relief.

On the record in this case, a record which the majority concede is "scanty," it cannot reasonably be said that the test has been satisfied. Concededly, the applicant can construct a two-car cinder block garage within the lot-line limitations. Nonetheless, he seeks permission to site it one foot from petitioner's land and he bases his request for a relaxation of the ordinance's six-foot requirement, not upon a showing that he would otherwise be denied a full enjoyment of his property, but upon a desire "to give the tenants a little yard." This is the basis upon which he premises application for relief and upon it, and it alone, notwithstanding what is made so clear in *Bernard,* the majority say in substance that the relief they approve "was

reasonably necessary for the full enjoyment of a permitted use."

If a grant of permission is appropriate upon such a showing, then in my judgment zoning boards are now free on applications for a relaxation of side and rear yard regulations to cater to the convenience of landowners and to tailor the relief they authorize to the whims and caprices of applicants. With such a rule I cannot agree.

I recognize as settled that a decision of a zoning board which contains no findings of fact may nonetheless be approved if it is predicated upon competent record evidence. And, of course, it is true, as the majority say, that "implicit in the board's decision is the finding that the evidence showed an adverse effect amounting to more than mere inconvenience and to deny the applicant a fuller use of his property and at the same time serve no public interest would be arbitrary and an abuse of discretion." That abstract proposition, however, is of no help in this case where the only question relates to the nature of the evidence upon which the implicit finding rests. On that question, as I have already indicated, recognition of a property owner's desire for more yard space[1] as the necessary prerequisite for permitting a relaxation of lot-line limitations renders illusory and makes meaningless the ordinances of our various cities and towns duly enacted pursuant to a legislative grant of authority (G. L. 1956, §45-24-1) to regulate and restrict the size of yards and the percentage

---

[1] The only reason for the proposed variation disclosed by the record of the proceedings before the board a record which consists of only one and one-quarter typed pages, appears in the applicant's statement which in its entirety reads as follows:

"I've been there twenty-two years, I've improved the corner of Constitution Street and High Street, I want a garage for modern cars and there is little land available. I want to stay on the line to give the tenants a little yard. I want to build a modern garage to put two cars, a big one and a small one. The old garage is too far gone to repair, it would cost too much money to repair."

518

of lots that may be occupied. I am unable to join in any such action.

KELLEHER, J., concurs in the dissenting opinion of Mr. Justice Joslin.

*Anthony J. Dennis, Jr.,* for petitioner.

*Anthony R. Berretto,* for respondent.