DECISION
Before the Court is an appeal from a decision of the Zoning Board of Review of the Town of Middletown (Board). Matthew Kirby and Michelle Kirby (appellants) seek reversal of the Board's decision of April 19, 2001 (Decision) granting the application of Janice Degaetano (applicant) for a dimensional variance. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 FACTS/TRAVEL
The subject premises is designated as Assessor's Plat 122, Lot 117A, and is located at 576 Tuckerman Avenue, Middletown in an R-20 zoning district. The applicant filed an application for a dimensional variance from the requirements of the Middletown Zoning Ordinance (Ordinance). Specifically, applicant sought to add one story for an extra bedroom, seven hundred and seventy five (775) square feet, above her existing garage. The proposed purpose of the addition was an additional sleeping space for the applicant's 91 year old elderly mother, who as described by the applicant, "just needed a little privacy, you know, from the noise, the late hours perhaps, and she would have her own bathroom." (Tr. at 11-12.) The applicant's home is a legally existing nonconforming structure; hence the proposed bedroom above the garage was interpreted by the Middletown Zoning Officer as "increasing the extent of the nonconformity",therefore requiring a dimensional variance. Section 803G of the Middletown Zoning Ordinance states "[i]f a nonconforming structure can be extended or enlarged in any lawful manner without increasing the extent of its nonconformity, then any extension or enlargement thereof shall only be permitted in accordance with the District Dimensional Regulations of Section 603." Accordingly, a dimensional variance was sought.
The Board conducted a hearing on the application on March 27, 2001. During this hearing, the Board heard testimony in favor of the application from the applicant, two neighbors and the applicant's expert, Mr. Paul Hogan, a real estate expert. In opposition to the application, the Board did not hear any adverse witnesses. After hearing all of the testimony, the Board voted 4-1 in favor of granting the relief requested, finding that all the standards for granting a dimensional variance were met. The Board issued a written decision on April 19, 2001.
The appellants timely appealed the Board's decision on May 7, 2001. On appeal, the appellants argue that the applicant failed to meet the hardship requirements of G.L. § 45-24-41 and § 904 of the Middletown Zoning Ordinance; and that the Board misconstrued the proper standard for granting a dimensional variance.
 STANDARD OF REVIEW
This Court's appellate jurisdiction of zoning board of review decisions is pursuant to G.L. 1956 § 45-24-69(D), which states:
 "(D) The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The [C]ourt may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." § 45-24-69(D).
When reviewing the decision of the Board, this Court must examine the entire certified record to determine whether substantial evidence exists to support its findings. Salve Regina College v. Zoning Board of Review,594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); see also Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion [and] to accept or reject the evidence presented. Bellevue Shopping Center v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of the Board and is compelled to uphold the Board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 DIMENSIONAL VARIANCE
G.L. § 45-24-31(61)(b) defines a dimensional variance as
 "[p]ermission to part from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
Likewise, G.L. § 45-24-41(c) and § 904 of the Middletown Zoning Ordinance, in reference to the requirements for obtaining a dimensional variance, provide in pertinent part:
 "(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure, and not to the general characteristics of the surrounding area, and is not due to a physical or economic disability of the applicant . . .
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the Comprehensive Plan; and
 (4) That the relief to be granted is the least relief necessary."
Furthermore, § 45-24-41(d)(2) and § 904 also provide:
 "The Zoning Board of Review shall, in addition to the above general standards, require that evidence be entered into the record of the proceedings showing that . . . the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
Recently, the Supreme Court of Rhode Island interpreted revised subsection G.L. § 45-24-41 (d)(2) and held that the subsection established a higher standard for dimensional variance applicants regarding their burden of proof. Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001). The Court stated "[t]his new statutory burden of proof created by the 1991 amendment effectively sounded the death knell for the old Viti doctrine that allowed a property owner to obtain a dimensional variance simply by demonstrating an adverse impact amounting to more than a mere inconvenience." Id. Applicants are now required to show that "no other reasonable alternative" exists for the enjoyment of the property's legal beneficial use. Id.
Appellants' first argument on appeal is that the applicant/Board failed to show that without the dimensional variance requested there is "no reasonable alternative to enjoy a legally permitted beneficial use of [her] property." As previously stated, the Court in Sciacca construed G.L. § 45-24-41(d)(2) as imposing a heightened standard for applicants petitioning for dimensional variances. A review of the record in this case reveals that the Board did pay attention to other possible site alternatives for the extra bedroom/bathroom. During the hearing, the applicant's real estate expert testified that due to the size and configuration of the property, and the location of the house, garage, and pool thereon, the only reasonable location for the proposed addition was above the garage, within the zoning setbacks, as proposed. The expert stated: "We actually researched on how or where else could this addition be done on the site and not be within the setbacks. It isn't feasible." (Tr. at 40.) Moreover, the applicant testified: "I don't think we have a choice. If we wanted to put another bedroom on the piece of property, this is the only place we could possibly do it." (Tr. at 23.) The Board in its written decision also addresses the fact that the subject land is configured in such a way as to make the requested relief, "due to the unique characteristics of the subject land and structure." (Decision at 4.) However, the Board's attention to the lack of reasonable alternatives for the bedroom/bathroom by no means concludes the inquiry as to whether the applicant has satisfied the requisite hardship standard.
Indeed, the Decision of the Board goes on to state that: "The physical or economic disability of the Petitioner has not caused the Petitioner's hardship." (Decision at 5.) This important language reflects the statutory directive of § 45-24-41 (c)(1), which requires that the hardship "is not due to the physical or economic disability of the applicant."[1] The applicant in the present case wishes to expand her home due to the "physical disability," namely age, of her 91 year old mother. This is evident from a review of the transcript, wherein the applicant states:
 "Well, we feel as if we wanted more space; and the way this would be situated, it would certainly allow her a little more privacy and quiet. I have two young sons. You know, their hours are certainly different from her hours. So it would be enough of a distance between the rooms that she wouldn't be disturbed when she's trying to sleep. She would have privacy with her own bath. You know-91, she's on a different schedule . . . [w]ell we would like to yes, have more space to, you know, accommodate her situation. The other bedrooms in the house are very close to one another. They share walls." (Tr. at 22-23.)
Based upon the rubric of § 45-24-41(c)(1), which obviates the consideration of personal physical disabilities, it goes without saying that the applicant's desire to give her aging mother a higher degree of privacy, is insufficient to justify the requested regulatory relief.
Rhode Island case law includes certain factual situations constitute satisfaction of the requisite hardship standard. While the "more than a mere inconvenience" standard was unequivocally heightened in Sciacca, the lower standard was not satisfied where the applicants had no special purpose for the portion of the lot they wished to subdivide and found its maintenance a chore. Rozes v. Smith, 120 R.I. 515, 522, 388 A.2d 816, 820 (1978) (decided under the more stringent "substantial hardship" standard in ordinance) (dictum). In addition, an applicant's personal preference, by itself, is insufficient to grant the requested relief. See Lincoln Plastic Products Co. v. Zoning Bd. of Review, 104 R.I. 111, 115,242 A.2d 301, 303 (1968) (denying relief where applicants established only that they proposed to build "in a manner and place deemed by them as best suited for their purposes"); H.J. Bernard Realty Co. v. Zoning Bd. of Review, 96 R.I. 390, 394, 192 A.2d 8, 11 (1963) (rejecting view that property owner only needs to show that varying particular regulation "is for him a preferable alternative to compliance therewith). More importantly, the Court has previously held that an increase in the size of the applicant's family, requiring a larger home than the ordinance permitted, was at most, a mere inconvenience and thus insufficient to justify the granting of a deviation from regulatory requirements of the zoning ordinance. See DiDonato v. Zoning Bd. of Review, 104 R.I. 158, 165, 242 A.2d 416, 420 (1968) (denying deviation to permit construction of a house measuring twenty-six by forty-four feet which would reduce front setback from thirty to twenty feet and side setbacks from twenty to ten and fourteen feet). The above cases such as DiDonato were decided under a more liberal standard than that which now exists as a result of Sciacca.
Likewise, under the present facts of this appeal, it is evident that the applicant's desire to shelter her mother from the children's noise and late hours, amounts only to a desire to avoid a mere inconvenience. In fact, when applying the aforementioned guidelines to the case at bar, it is clear that the applicant's situation neither rises above the level of mere inconvenience nor does it rise to the even higher standard as set forth in Sciacca. Indeed, the present facts also indicate that the variance sought is contingent upon the physical condition of the applicant's mother, which directly violates one of the legal preconditions necessary for granting variance relief, as set forth in §45-24-41(c)(1). Therefore, while sympathetic to the applicant's desire to build an addition that more closely conforms to her lifestyle, this desire does not rise to the level of hardship by which this Court must measure the claim. Any other result would leave zoning boards free "to cater to the convenience of landowners and to tailor the relief they authorize to the whims and caprices of applicants." Travers v. Zoning Bd. of Review, 101 R.I. 510, 514, 225 A.2d 222, 226 (1967) (Joslin, J., dissenting).
 CONCLUSION
After a review of the entire record, this Court finds that the Board exceeded the authority granted to it by statute and ordinance. The Court further finds that the Board's Decision is clearly erroneous in view of the reliable and probative evidence of the whole record. Substantial rights of the appellants have been prejudiced. Accordingly, the Court reverses the April 19, 2001 decision of the Board.
Counsel shall submit the appropriate judgment for entry after notice.
[1] The definition of the word "physical" as provided in this portion of the statute, seems to render itself somewhat nebulous when considered in the context of land and structures. Indeed, a physical disability of the applicant might be confused with some physical flaw with the subject land itself. However, this Court finds that the word "physical," in the context of § 45-24-41(c)(1), deals with disabilities as they relate to the actual person. Evidence of this fact can be found in §45-24-30(16), which is expressly referenced by § 45-24-41(c)(1) and sets forth extraneous statutes such as the Rhode Island Civil Rights of Persons with Disabilities Act, and the Americans with Disabilities Act. Furthermore, this interpretation is bolstered by the fact that the first sentence of § 45-24-41(c)(1) deals with "the unique characteristics of the subject land or structure . . .", thereby making clear that the second sentence referring to "physical . . . disability of the applicant," must have a meaning independent of the subject land. Any other interpretation would produce the absurd result of having two consecutive sentences, both describing the same concept in a completely different fashion.